The first matter listed for this morning is United States of America v. Kenneth R.Douglas. As per our procedure, there will be five minutes of uninterrupted argument for each advocate. Mr. Bernard? Thank you, Your Honor. May it please this honorable court, Attorney Ivory, my name is Arnold Bernard and I represent the appellant in this matter, Kenneth Douglas. I would ask this panel if I would be permitted to retain five minutes for rebuttal in this matter. Granted. Thank you. It's truly a humbling experience to be here before an NBANC convention of this honorable court. On behalf of myself and my client, I'd like to thank this court for granting additional review in this very important matter. This decision will impact Mr. Douglas, but not only Mr. Douglas. It will likely impact similarly situated defendants across the nation. So with that, I'm going to proceed to the arguments I've prepared. I'm going to dispense with explaining the standard of review that we are to employ in this matter. I don't believe that's at issue with regards to reviewing a sentencing decision. However, I would like to articulate the issue, and I believe it's a very narrow and finite issue that this court must decide. And that issue is specifically whether the appellant, Kenneth Douglas, held a position of trust when he was employed by United Airlines as an airline mechanic who possessed a security clearance and was convicted of smuggling cocaine through that airport that he worked at. Now, when we review the position of trust enhancement, we utilize a two-step process determining whether or not the appellant held a position of trust, and if so, then whether the appellant abused that position of trust. That first step is reviewed de novo, and that's what this court is looking at here. So what constitutes a position of trust? Well, the commentary to the sentencing guidelines, which are binding on the district court as well as this honorable court here today, states that a position of public or private trust refers to a position characterized by professional or managerial discretion. And that is discretionary judgment that is ordinarily given considerable deference. The commentary goes on to provide two examples of when the enhancement should not be applied and one example of when it should be applied. The commentary suggests that the enhancement should be applied in a case where an attorney serving as the fiduciary to a trustee abuses his power and embezzles money from that trustee. That example deals with the relationship between the defendant and the victim of the crime. The two instances in which the commentary says the enhancement should not apply, specifically that of a bank teller who embezzles money from the bank or a hotel clerk who embezzles money from the hotel, those two examples I would submit that the distinction between those examples and the singular example that it provides for when it should apply are that the individuals in those examples have mere physical access or the mere physical means to commit the crime by virtue of their access to areas from which the general public is prohibited. Those two examples I would submit are the perfect analog to appellant Kenneth Douglas' situation. Now, beyond the text of the guidelines and the commentary, this court has also generated three factors and those were articulated in the case of United States v. Pardo. When determining whether or not an individual held a position of trust, this court first looks to whether the position allows the defendant to commit a difficult attempt wrong. It then looks to the degree of authority which the position vests in the defendant vis-à-vis the object of the wrongful act. And lastly, whether there is reliance on the integrity of the person occupying that position. So when we look at those three factors as applied to Mr. Douglas, I would first submit that it was not his position that enabled him to commit a difficult attempt wrong. It wasn't the fact that he was an airline mechanic. It wouldn't have mattered if he were an airline mechanic, a janitor, someone who worked at one of the eateries, a ticket agent. Any person employed in that airport who had a security clearance equal to that of Ken Douglas had the same ability to commit this offense as he did. It was not specifically his position. I would submit that his position did not lend him any discretion or judgment over anything other than his duties as a mechanic as far as whether or not a part needs to be repaired or replaced. That's what he had discretionary judgment over. Turning to the second prong of that test, it goes hand in hand with what I just articulated there. Wasn't Mr. Pardo the kind of insider envisioned – wasn't Mr. Douglas the kind of insider that was envisioned by Pardo? I mean, he had literally access to areas inside of the airport that most people didn't have access to. Yes, Your Honor. I would disagree that he was the type of insider that as articulated in Pardo. I would say near geographical access is not what the guideline is intended to cover. And I believe that persuasive authority from other circuits sort of follows suit with that. If we look at the First Circuit decisions in United States v. Puerto Rican, United States v. Corey, those deal with virtually indistinguishable facts from Mr. Douglas. It involves airport employees who were, in the case of Corey, a janitor, and in the case of Perea Roman, fleet service clerks whose duties included loading and unloading planes, de-icing planes, guiding planes through ground level activities. They had no discretionary judgment either, but they did have that security. Is there a distinction between a public trust and a private trust? And if so, what is that distinction? I would say, Your Honor, the guidelines make no real distinction. The guidelines... But there must be because they use... Why qualify it between a public trust and a private trust if it doesn't have a meaning? Well, Your Honor, I don't think that they qualify it. I think it just offers an alternative. I mean, if you look at a private trust, that typically involves a trust between the defendant and a specific victim or another individual or a class of individuals. The public is a position which instills trust in an individual vis-a-vis the public at large. I think it's fair to say that the public would expect that people who have security clearance don't use those for nefarious purposes. However, I don't believe that the security clearance in and of itself constitutes a position of trust vis-a-vis the public at large. Is a night watchman at a nuclear power plant in a position of public trust? Or a day watchman. I'm sorry? Or a day watchman. Just a day watchman. What distinguishes it? Is a watchman a lowly, relatively speaking, lowly compensated employee who's a watchman at a nuclear power plant in a position of public trust? Your Honor, I would argue that it depends on what the object of the wrongful act is. The night watchman at a nuclear facility is in a position of trust insofar as it's his job and he has discretion over who has access to that facility. If he abuses that public trust by admitting persons who aren't supposed to be there into that facility or by allowing the commission of some crime to occur on the premises when it's his duty to prevent that from occurring, then I would submit that, yes, he was abusing that trust. So there's got to be some nexus between the trust and the wrongful act. Absolutely, Your Honor. And how do you get that in Pardo? For Pardo, it's that second prong. The second prong. The degree of authority vis-a-vis the object of the wrongful act. What's the difference between the first and the third prong in Pardo? What's the difference? The difference between the first and the third prong. Position allows the person to commit the wrong, number one, and three, whether there's been reliance on the integrity of the person occupying the position. Isn't that the same thing? It is very similar. I would agree with that, yes. Mr. Newton, very similar in the same thing. Very little. One from an ad, zero from a key. That's not the first time that's happened. Is the societal interest in airport security sufficiently analogous to prison security? I would submit that there are some similarities and there are some distinctions. And I faced this question at the initial argument, and my position is the same. Essentially, with regards to the prison guards, who are tasked with preventing contraband from coming in and out of the facility, it's their job to do that. It's their job to prevent contraband from coming in and out. They effect searches on people entering the facility. They search packages, everything. That's what they have authority over, what gets in and what gets out. So if they are involved in that, then they're abusing that authority by allowing those things to come through. Ken Douglas does not have authority over who passes through TSA security, what they have in their bag, or anything. It's not his job to prevent drugs from coming into an airport. Some of those prison cases, the jobs of the individuals in those cases weren't the guards clearing people in for visitation or other purposes. They worked in food services, et cetera. So isn't Mr. Douglas like those prison officials who are subject to a regulatory scheme at a place where the public expects people to comport themselves in particular ways, and particularly in an airport subject to a pretty comprehensive, but even if it were a simple scheme, for the purposes of the public's trust. So shouldn't the focus be whether those with the privilege of having such access have to comport themselves in a particular way to fill the trust they owe to the public? I would submit, Your Honor, that the individual's level of access is not what creates the position of trust. We believe that our prison guards, and I speak we as a society, believe that our prison guards or our prison workers, whether that's a cafeteria worker or what have you, it is the job of everyone at a prison to a certain extent to prevent contraband from entering that facility. I would submit that that's not the same at an airport. While airport security is indeed one of the most important securities, especially in light of 9-11 in the wake of a lot of the terrorist attacks that we've seen that have involved airports, it is of the highest priority. However, that doesn't mean that everyone employed by an airline has the job of preventing things that shouldn't come into an airport from coming into an airport. The regulatory scheme even holds that, aside from all the background checks and the training, that if someone violates the security regulations, the Department of Transportation was tasked with imposing punishment for that. So isn't this just different in that we should consider the trust of the public and those working at that location that's invested in those with the privilege of having such access? Well, I would submit that the regulatory scheme, while on its face, appears to be rather rigorous and stringent, when you dig down into it isn't as rigorous as it seems. I mean, they use some fancy language, including the SIDA, the SIDA, the sterile area, those sorts of things. But when you look at the nuts and bolts of what's required, it's actually just a simple background check. The person must submit to a fingerprint criminal history check. If they have any type of criminal history, then they're not eligible for the security clearance. They must wear their badge and have access only to specific areas. Is that where you want to be? I mean, if you start talking about how comprehensive a regulatory scheme is, it seems to me that you're conceding that if there were a sufficiently rigorous regulatory scheme, then everybody working in the airport would be in a position of public trust. Is that the position you've got? My position, Your Honor, and this was just in anticipation of what I expected the government would be arguing, is that even if the regulatory scheme that they address in their motion to take judicial notice, even if that were to have been applied to Mr. Douglas, the mandates of that regulatory scheme are insufficient to create a position of trust. Now, your question, I believe, was could there be a regulatory scheme that does create a position of trust? He's saying you're fighting in the wrong field. I'm wondering why you're getting into the details of that because, well, let me ask it to you this way. Am I correct that the three inquiries that Pardo directs us to take are directed at prong one of the two-part test? We have a two-part test. Yes. Is it a position of trust? Did you abuse your position of trust? And Pardo says at the first step, you should ask these three questions, and that's the three that we've been talking about. Is that right? Yes, Your Honor. Okay. Is that consistent with what other circuits have done? Other circuits have similar tests. They're not identical to Pardo. A lot of them take into consideration the level of professional managerial discretion that the defendant had, and that is a part of a test, especially I would submit that it's embodied in that second prong, the degree of authority. Well, that's his inquiry. Why not respond to this whole area, if you will, by suggesting that there should be some nexus between that which is regulated and the trust? We trust the mechanic to torque the nuts right on the engine and on the wheels. You may answer Judge McKee's question. Thank you. I would agree, Judge McKee. That is exactly what I would be advocating for, and I believe that is embodied in that vis-a-vis clause, which is over the object of the wrongful act. And Mr. Douglas has authority, as you said, to determine how tight a nut or bolt needs to be tightened, whether an airplane part needs to be repaired or replaced. He has authority over that, and we trust him to do that job with integrity. We do not. He does not hold a position of trust as far as determining what flows in and out of an airplane. All right. Thank you, Mr. Varner. We'll have you back on rebuttal. Mr. Ivory. May it please the Court. My name is Michael Ivory. I'm an assistant U.S. attorney, and I'm from Pittsburgh. Good morning, Your Honors. The issue of whether Mr. Douglas abused the position of trust was correctly decided under the framework established by this Court in United States v. Pardo. The adjustment found in Section 3B.1.3 of the Sentencing Guidelines applies in this case. Mr. Douglas's position as a Johnny-on-the-spot line mechanic was characterized by discretion as that term is contemplated by the Sentencing Guidelines. This discretion existed or was made possible by the following factors. First, Mr. Douglas's training and certification as an airline mechanic. Secondly, his security clearance. Third, his airport operations authority badge. And fourth, the fact that he was known and trusted by other airport personnel. Mr. Douglas's position essentially cloaked him from suspicion or screening as he moved throughout the airport unaccompanied and without challenge. The record shows that on at least five occasions when Mr. Douglas was not scheduled to work, he was able to smuggle cocaine past security into the terminal and then onboard an airplane. There's absolutely no evidence that Mr. Douglas was ever questioned or scrutinized for being at work when he was not supposed to be there. And there's no evidence that Mr. Douglas's actions aroused the suspicions of airport security personnel. Donald Staples, a mechanic who worked at the same facility and was also involved in the smuggling operation, testified that Mr. Douglas never told him that he had ever been challenged or questioned for being at the airport on days he was scheduled to be off. The discretion made possible by Mr. Douglas's access was an integral, if not indispensable, component of his job. Mr. Douglas could come and go as he pleased and when he pleased at the airport. He could move throughout the airport alone without a supervisor monitoring where he went or what he did when he got there. The record also documents that there were at least eight occasions when Mr. Douglas was supposed to be on the job yet left to deliver cocaine to a courier who had bypassed TSA security, had passed through TSA security. Mr. Douglas worked a midnight shift from 9 p.m. to 7.30 a.m. and the record shows that he met with couriers and delivered cocaine to them during his shift. Mr. Staples described the procedure that was involved. Mr. Douglas would essentially go to his locker area where the cocaine had been stored. He would remove his overalls. He would remove the bag containing a large amount of cocaine from his locker. He would access the terminal via the ramp or the jet bridge. Mr. Douglas would then locate where the courier was situated, sit down next to him, place the bag between them and then return back to work. Again, this occurred on at least eight occasions while Mr. Douglas was on his shift and the couriers were booked on United Flight 756 with a departure time of approximately 6 a.m. Mr. Douglas was trusted and supervised by virtue of his position. He could carry large, strange bags into the most secure areas of the airport without being challenged and the record shows that each shipment ranged in size from between 10 to 13 kilograms. Now, in physical terms, that is a large amount of cocaine. Mr. Staples testified that the bag was capable of holding at least four basketballs, yet Mr. Douglas was able to carry these bags into the secured area of the terminal 46 different times and on 17 separate occasions he took those bags onto a passenger aircraft without undergoing even the most cursory screening. Douglas was well aware that he was carrying bags onto the planes or that he was enabling others to do so as well. Although he had been told that the substance contained in the bags was cocaine, there was no evidence that he ever inspected the bags or their contents because they had been delivered to him prepackaged by Mr. Staples. Again, this was all made possible with the fact that mechanics in Mr. Douglas' position were trusted with and supervised access to all areas of the airport and I'm prepared to answer the court's questions at this point. Thank you. Mr. Ivory. Yes, sir. We give the sentencing guidelines commentary the same high degree of deference that we give an administrative agency's reading of its own regulations and I've been focused on some specific language and cut upon and I'm curious as to how the government, how the district court, and how this court on review could find in this record really any indicia of professional or managerial discretion. Where is that? Vis-a-vis the part of the test, your honor, I believe it would fall within the second prong of the test. I'm asking about the record here. What's the record show with respect to Mr. Douglas' position? There are numerous instances in the record. Mr. Douglas was a trained and certified flight mechanic. That's contained within the pre-sentence report. What does that mean in terms of the question the chief just asked you? What kind of supervision does a trained and certified flight mechanic have? By the way, who does he supervise? There's no evidence on the record that Mr. Douglas supervised anyone. So you're talking about professional discretion then? Professional discretion. The language is disjunctive, so we rule that matter. Well, it all depends on what we mean by the term professional. What does the guideline say? The commentary. The commentary provides, it says, substantial discretionary judgment that is ordinarily given considerable deference. What is it about Mr. Douglas' job that would fall within what you've just read? Mr. Douglas, based upon the record, could apparently, while performing his job, go anywhere within the airport as it was necessary. We're talking about status or position. That's what I'm asking you about, and you're responding with access. Was Mr. Douglas a supervisor in the sense that he oversaw the activities of other people? There is no evidence in the record concerning that. Was there specific instances in the record where Mr. Douglas possessed a professional degree, so to speak, such as a law degree or a medical degree? That's not in the record as well. But there are discretionary aspects concerning Mr. Douglas' job, I think, that could be looked at as almost a de facto professionalism as that term is contemplated within the guidelines. Give me an example. Well, we have to consider Mr. Douglas' position. He was a line mechanic. He was an individual who pretty much was a Johnny-on-the-spot type of individual who could apparently go and do work without being supervised. What does that have to do with having professional judgment in the context of the Pardo test that we're working with? Well, if we look at professional judgment as in terms of something being deferred to, I mean, clearly I think that the record supports at least an implication or inference that individuals deferred to Mr. Douglas' judgment actually performed his job. About whether the lug nuts are tightened, but not about anything having to do with this crime. I guess the question is, speak to the specific example that the commentary gives when it says a bank teller wouldn't fit this. How is he different, if he is different, from a bank teller who's got access to money? Because he's a mechanic who happens to have access to secure parts of the airport. Well, bank tellers are subject to daily scrutiny. They are over-signed, over- Mechanics are subject to scrutiny when they're walking in and out. Got a short badge, right? There's no evidence that Mr. Douglas was subject to the same degree of scrutiny as a bank teller. You would concede, would you not, that access alone is not enough to get you across the line? Because even that bank teller has access. That can't in and of itself be enough. But the bank teller is supervised. The bank teller's till is checked at the end of the day. So if that bank teller is taking money, if he or she's embezzling, they're going to know it by the end of the day, or they're going to see it through- If a court employee is in a, let's say this courthouse, and a court employee is taking property over the course of time, and ultimately is found out, is that court employee in a position of trust? I think you would have to know more about what the position of- Let's say he's a judicial assistant, works in a judge's chambers. Over the course of time, starts taking notepads, and then this, and the next thing, and the next thing, and the next thing. Over the course of time, it really builds up. And that person is found out, and is charged, and convicted. Ultimately, is that person in a position of trust? I don't think in that situation that would occur. I think there's an abuse of trust, but there's not an abuse of the position of trust. So what is the distinction that you draw? We would have to know more about that particular legal assistant's job, the context in which the theft occurred. Let's change the position a little bit. Let's say it's the circuit executive. Who's sitting here, a lovely person. We're good. We're not blaming her. It's hypothetical. It's just hypothetical. Please change your facts. Please. This is such good information. We don't want to block you. Oh, my goodness. Let's assume someone. The Ninth Circuit's executive. Well, in that case, it's clearly an abuse of a position of trust. All right, so take the Ninth Circuit's executive. And they have access to the entire courthouse. Right. Okay? Take the custodian in the Ninth Circuit courthouse. He has access to the entire courthouse. Okay. Now take a permanent law clerk. That person has absolute access throughout the courthouse. Each of them, simultaneously but unknown to the other, is engaging in fraudulent activity of whatever sort we want to assume. Okay? So my question to you is, does the enhancement apply in each instance? And if it doesn't, why not? Let's start at the top. When we're dealing with the circuit administrator, that is a position that is marked by traditional professional and managerial discretion. I mean, he or she runs the whole show, so we do have managerial discretion. Some judges may take issue with that, but let's assume that's correct. So maybe she doesn't. Maybe not. I stand corrected. Thank you. This is a tough group to control. I know. I know. But we're talking about managerial discretion at that point. The circuit executive is easy, right? You would have been the professional managerial discretion. It's easier, yes. Okay. Now let's talk about the other two. The permanent law clerk? Yes. You would have to consider, in that case, we're talking about someone who has a professional degree. You know, what is the – how does the discretion factor into the theft? I mean, earlier the court was talking or asking questions about is there a nexus? So I think that a nexus is something that you would have to look at. You would have to look for both with respect to the permanent law clerk as well as the procedure. Is the nexus something more than access? I'm sorry. Go ahead. You can answer. Is the nexus something more than access? I think access is part of the nexus. Judge Schwartz? Yeah. My question to you is, in listening to the vignettes that were presented and watching you think, it appears that what you're going through is context matters. Context does matter. And so in the context of this case does, because you asked us, and we obviously were aware of the existence of the regulatory scheme based on the opinion that had been issued. But you asked us to consider the fact that it occurred at an airport where there's this regulatory scheme about what happens and the expectations of the public concerning it. So for each of these hypotheticals, how do we factor in context, if it should all matter, and should that inform whether a person holds a position of trust? Well, with respect to the Ninth Circuit situation, I think you would have to take into account not only the context in which it occurs and who's engaged in the activity, but what is the expectation that the court would have in its employees. Mr. Ivory, would you agree that the hypothetical questions and your answers to them suggest that, as context matters, most of these cases are exquisitely factual in their ultimate determination? I would say they are painfully factual, yes, Your Honor. Well, we'll see who feels the pain, I guess. But with that in mind, it's the government that is seeking the enhancement here. And therefore, it's the government with the burden and the government that has to develop the record upon which such a determination is made. I return to my original inquiry because it seems to me there's not much in this record that would allow the determination that was made by the district court. I would agree that the record could be stronger. It would be nice if we had had information concerning Mr. Douglas' job description, testimony from a supervisor, if he in fact had a supervisor other than Mr. Botto, who was in charge of the whole maintenance division, maintenance department. It would be nice to find out why these line mechanics had the discretion that they did in exercising their job. What's the discretion here? He's able to bypass TSA. How is that discretionary? Where's the discretion? That they were able, apparently, as I read the record, these individuals were charged with conducting minor repairs while the airplane was still within the operating area of the airport. That is the tarmac right by the jet bridge. That if a problem occurred, that they had the discretion to deal with that problem as they saw fit. You're back to access, though, right? You're just talking about access. You said a few minutes ago that the difference between the mechanic and the bank teller is that the bank teller is supervised and a mechanic like Mr. Douglas isn't. But doesn't the guideline ask us to question whether a person has supervisory authority, not whether they were supervised? It's professional and managerial discretion. Right. I'm wondering where you get the idea that being unsupervised is the same as or equivalent to having supervisory authority. Where's the logical connection there? A supervisor can exercise discretion. And I think that here we have individuals who are able to exercise discretion as well. Aren't the government concerns addressed in 5K2.14? There's a guideline section that speaks to national security. Doesn't that address the government's concerns in this case? It possibly could. But this was not a national security case, though. Yes, I mean, we were concerned about the fact that there was a compromise of a highly regulated, a highly secure facility by this individual's actions. But there could be a guideline that could apply, but it also could apply with the position of trust. If we go back to the nature of the discretion here, when you talk about context and access, I'm wondering if you're not conflating the first and second prongs in the sense that the commentary seems to focus us, as to discretion, on the actual job duties. The actual job duties of a mechanic, for example, would include having to fill out forms, reports, inventories, checking off logs of what was done, when it was done, maintaining those. In terms of the job duties, there it doesn't appear that there's professional or managerial judgment or discretion being exercised. Rather, your argument seems to be about access to a secure area, that is of some exception for airports or security clearances. And there, and I'm sorry for the compound question, but it's hard to squeeze one in. There, don't we already have additional guidance in commentary too? And that is that the Commission has already carved out a couple of exceptions where folks don't have that type of discretion. They amended commentary too in 2005 and 2009, well after the advent of TSA and airports being heightened security concerns. Why didn't the Commission create an exception, and isn't that where we need to see one carved out? We have the various exceptions that have been carved out. We talked about the postal employees. When that was done back in the 90s, the Commission recognized there was a special nature involved of the U.S. mails. When we were looking at the other amendments to the guidelines, we were carving out the exceptions, as my understanding is that they were made in response to statutory directives, Congressional directives, as well as when we're talking about the trustees of an employee pension fund or a labor fund, there's a specific statute that directs that these individuals are fiduciary. So I think they're incorporating that into it. When we're talking about the access in this case, I mean the access is part and parcel of Mr. Douglas' job. He needs access to the secured facilities to carry out his job. And to the extent that we're looking for an access, he did abuse that access to deliver drugs into the airport over 46 separate times in a nine-month period. Thank you very much, Mr. Bernard. Thank you, Your Honors. Mr. Bernard, we'll have you back in rebuttal. Thank you, Your Honors. Just trying to touch on some of the things raised by Mr. Ivory's argument. First of all, I would point out that the Honorable Judge Crouse raises an interesting point and one that I think is of great importance to the decision in this matter, and that is the fact that the Commission has created exceptions to this position of trust sentencing scheme, but that airports have been excluded from that. Mr. Bernard, Mr. Ivory made a distinction between the position of trust and the violation of trust. Isn't that really what this court thinks about, that all the examples that we're talking about may well involve a violation of trust? That's not the point. The point is whether or not they involve a violation of a position of trust. We looked at the commentary in the text of B.1.3. What is a position of trust? The submission is a position of trust has to be something more than access, and when the nexus between the violation of the position of trust and the crime is only the fact that the access is afforded because of the trust, you don't get to a position of trust. You just get to a violation of trust that facilitates the crime. That's what the retort is. That is exactly the position that we hold, Your Honor, exactly the position that we hold. Why don't we need to consider the nature of access? Certainly in other circuits, and we have cases as well, prisons, for example, the concern is not merely access, but that the population in question is particularly vulnerable, and those who aren't trusted to work within that population or in those areas are therefore carrying a special kind of trust. We consider that with parents or guardians or fiduciaries, for example. Why isn't that equally true when we talk about an area as sensitive and as much of a concern in the vulnerability of the public to safety as an airport? Why can't we read that in to the nature of judgment and discretion? Well, Your Honor, I think that, number one, if this court were to carve out a special exception, so to speak, and find that the mere possession of a security clearance would create a position of trust, even if it's limited to the airport scenario, it's a slippery slope because there are a number of other areas that are secured in our society that we expect the people who have access to those that the public does not to not use that ability, that geographical access, for nefarious purposes. I would suggest that when you look at the type of relationships that the guidelines are found to apply to, those typically, as you said, involve areas in which the trust that's being compromised is bestowed on them over, I hesitate to use the term vulnerable victim because that isn't of itself its own sensing enhancement, but that's essentially what we're talking about. It's an area where a doctor abuses the trust of his patient. That patient relies on the discretion and the judgment made by that doctor in deciding what course of treatment to undergo. The trustee places the trust in their fiduciary to act in their best interest, not to embezzle funds from them. Mr. Bernard, you lean on those higher-level positions, and the First Circuit opinions support your argument, but the First Circuit opinion used the word menial. They basically excluded menial workers from this enhancement. Is that your position? I don't believe it's necessarily limited to those in menial positions. What is a menial position? A menial position, for lack of a better word, would be one that is lower-level, where the individual who holds a menial position lacks supervisory authority, is limited in the decision-making that they're permitted to do. So a clerk who works, the lowest-compensated clerk, who works in a highly sensitive environment, nuclear power plant, the Department of Defense, can't ever qualify for this enhancement? I would say that it's not a blanket sentiment to say that they could not apply this enhancement to that individual. I think you'd have to look at the facts. It's highly fact-dependent. So if it's really difficult to discern, why should not the default position of the appellate court be to defer to the trial judge, regardless of which way the trial judge comes out on this? Well, when we're looking at the facts, I think the facts, deciding whether a position is a position of trust is not as dependent on the facts as whether or not the individual abused that position of trust. Thank you, Mr. Bernhard. Thank you. That will conclude argument in United States of America v. Kenneth R. Douglas. On behalf of the court, I want to thank both of counsel for their very helpful and thoughtful arguments. We'll take the matter under advisement.